**IN THE UNITED STATES BANKRUPTCY COURT FOR THE**
**EASTERN DISTRICT OF TENNESSEE**

In re

                                                        Case No.  08-32081

THOMAS EARLE VICKERS
MELBA JEAN VICKERS

               Debtors

**MEMORANDUM ON TRUSTEE'S**
**OBJECTION TO CLAIM OF EXEMPTION**

**APPEARANCES:**    C. EDWIN SHOEMAKER, ESQ.
                            9111 Cross Park Drive
                            Suite D-200
                            Knoxville, Tennessee  37923
                            Attorney for Debtors

                            MOSTOLLER, STULBERG, WHITFIELD & ALLEN
                              Ann Mostoller, Esq.
                              136 South Illinois Avenue
                              Suite 104
                              Oak Ridge, Tennessee  37830
                              Attorneys for Chapter 7 Trustee

                            RICHARD F. CLIPPARD, ESQ.
                            UNITED STATES TRUSTEE
                              Patricia C. Foster, Esq.
                              Howard H. Baker, Jr. United States Courthouse
                              800 Market Street
                              Suite 114
                              Knoxville, Tennessee  37902
                              Attorneys for United States Trustee

**RICHARD STAIR, JR.**
**UNITED STATES BANKRUPTCY JUDGE**

This contested matter is before the court upon the Objection to Debtor's Claim of Exemption (Objection to Exemption) filed by Ann Mostoller, Chapter 7 Trustee, on July 8, 2008, objecting to the Debtor Thomas E. Vickers' claimed exemption in an annuity under Tennessee Code Annotated § 26-2-111(1)(D) (Supp. 2008). A hearing was held on August 7, 2008, and the matter set for trial on November 5, 2008. Pursuant to the Pre-Trial Order entered August 20, 2008, the parties filed Stipulations on October 27, 2008, as amended by Amended Stipulations (collectively, Stipulations) filed on October 29, 2008, wherein the parties stipulated that a trial was not necessary and the issues could be determined by the court on the Stipulations and briefs. On October 29, 2008, the Debtors filed their Brief of Debtors in Response to Objection to Exemption and the Trustee filed her Brief in Support of Trustee's Objection to Debtors' Claim of Exemption.

The facts and documents essential to the resolution of this issue are before the court on the Stipulations which include the following exhibits: (1) an Annuity Application to ReliaStar Life Insurance Company dated January 10, 2000; (2) a Transaction Confirmation from C.M. Life dated February 4, 2000, confirming transfer of $39,134.20 from the SEP/IRA of the Debtor,[1] account number 9811811; (3) a Single Premium Immediate Annuity Contract from ReliaStar Life Insurance Company issued to Thomas E. Vickers, Annuitant; (4) a letter dated April 21, 2008, from Sara Tschannen, Annuitizations Coordinator for ING, to Thomas Vickers, c/o Melba Vickers, together with an Account Statement issued by ReliaStar Life Insurance Company, evidencing the payment history on the Debtor's annuity from January through December 2007; (5) a letter dated October 24, 2008, from C. Edwin Shoemaker to ING/ReliaStar Life Insurance Company; (6) a letter dated

---

[1] References to the "Debtor" in this Memorandum are to Thomas E. Vickers.

October 28, 2008, from Sara Tschannen, Annuitizations Coordinator for ING, to Thomas Vickers, c/o C. Edwin Shoemaker with the January 10, 2000 Application and confirmation documents attached.

This is a core proceeding. 28 U.S.C. § 157(b)(2)(B) (2006).

# I

On January 10, 2000, the Debtor submitted an "Application IRA/ Nonqualified" (Annuity Application) to ReliaStar Insurance Company applying for a Single Premium Immediate Annuity to replace a variable SEP-IRA annuity with C.M. Life Insurance Company. STIPS. at ¶ 1; EX. 1. The purchase price was derived through a transfer/rollover of the C.M. Life Insurance Company SEP-IRA annuity and Melba J. Vickers was designated as primary beneficiary on the Annuity Application. STIP. EX. 1. On February 4, 2000, the net amount of $39,134.20, representing the balance of the Debtor's C.M. Life Insurance SEP-IRA account number 9811811, was used to purchase the Single Premium Immediate Annuity Contract, policy number US00133460 (hereinafter, ReliaStar Annuity), which was issued on February 14, 2000. STIPS. at ¶¶ 2-4; EXS. 2, 3.

> The terms of the ReliaStar Annuity are as follows:
>
> Beginning with the first payment due March 14, 2000, monthly payments of $319.05 will be made for a guaranteed 132 months and thereafter during the lifetime of the annuitant, ceasing with the payment to be made on the due date immediately following the death of the annuitant.
>
> If the annuitant dies before all of the guaranteed payments have been made, the remainder of the guaranteed payments will be made to the beneficiary. If no beneficiary survives the annuitant, the remainder of the guaranteed payments will be made to the annuitant's estate.

> If the beneficiary dies after the annuitant but before all guaranteed payments have been made, the remainder of the guaranteed payments will be paid to the estate of the beneficiary.

STIPS. at ¶ 6; EX. 3 at 2. The Annuitant is the Debtor who is also the Owner of the ReliaStar Annuity, and the issue age is 67, with the first payment of $319.05 commencing on March 14, 2000, and continuing for a period of "11 year certain and life." STIPS. at ¶¶ 4-5; EXS. 3, 4. In summary, the Debtor is entitled to receive payments of $319.05 each month for the duration of his lifetime, with a guaranteed period of eleven years, during which time, in the event of his death, any payments would be paid to Melba Jean Vickers as primary beneficiary or, if she is not living, to the Estate of Thomas E. Vickers as secondary beneficiary. STIPS. at ¶ 7; EXS. 3, 4.

Under the terms of the ReliaStar Annuity, there is no right to borrow under the contract and although the Debtor, as Owner, may name a different owner or change the beneficiary and/or payee, the ReliaStar Annuity is "irrevocable [such that c]hanges to the payment amount, frequency of payments, and the length of payout are not permissible at any time." STIPS. at ¶¶ 8, 12; EXS. 3 at 4, 6. Accordingly, "[o]nce Income Payments begin, the contract has no surrender value and it cannot be surrendered for the commuted value of Income Payments under the unexpired term." STIPS. at ¶ 9; Ex. 3 at 7. Additionally, there are no anti-alienation or spendthrift provisions or restrictions applicable to the ReliaStar Annuity, and it is considered "non-qualified" under the Internal Revenue Code. STIPS. at ¶¶ 10-11.

On May 13, 2008, the Debtors filed the Voluntary Petition commencing their case under Chapter 7 of the Bankruptcy Code and their discharge was granted on September 2, 2008. The

4

Debtors valued the Annuity at $0.00 among their assets on Schedule B - Personal Property and the Debtor claimed an exemption in that amount on Schedule C-Property Claimed As Exempt pursuant to Tennessee Code Annotated § 26-2-111(1)(D). After the Trustee filed her Objection to Exemption on July 8, 2008,[2] the Debtors amended their Schedules B and C on September 5, 2008, listing the exempt value of the ReliaStar Annuity as "lifetime payments of $319.05/mo."

As set forth in the Pre-Trial Order, the issue the court is called upon to resolve is "[w]hether or not the Debtor Husband can exempt under T.C.A. § 26-2-111(1)(D) his lifetime annuity, which provides for monthly payments of $319.05 for his lifetime, or in the event of his death, which guarantees the same payments to his beneficiary wife for a period ending eleven (11) years after the original commencement of payments."

## II

The filing of the Debtors' bankruptcy petition created their bankruptcy estate, and all property and interests in property owned by the Debtors became property of their estate. 11 U.S.C. § 541 (2006). Nevertheless, they may exempt certain property interests by virtue of 11 U.S.C. § 522:

> (b)(1) Notwithstanding section 541 of this title, an individual debtor may exempt from property of the estate the property listed in either paragraph (2) or, in the alternative, paragraph (3) of this subsection. . . .
>
> (2) Property listed in this paragraph is property that is specified under subsection (d), unless the State law that is applicable to the debtor under paragraph (3)(A) specifically does not so authorize.
>
> (3) Property listed in this paragraph is—

---

[2] The Stipulations erroneously recite that the Objection to Exemption was filed on July 7, 2008.

> (A) subject to subsections (o) and (p), any property that is exempt under Federal law, other than subsection (d) of this section, or State or local law that is applicable on the date of the filing of the petition at the place in which the debtor's domicile has been located for the 730 days immediately preceding the date of the filing of the petition or if the debtor's domicile has not been located at a single State for such 730-day period, the place in which the debtor's domicile was located for 180 days immediately preceding the 730-day period or for a longer portion of such 180-day period than in any other place; [and]
>
> (B) any interest in property in which the debtor had, immediately before the commencement of the case, an interest as a tenant by the entirety or joint tenant to the extent that such interest as a tenant by the entirety or joint tenant is exempt from process under applicable nonbankruptcy law[.]

11 U.S.C. § 522 (2006).

Exempt property "is subtracted from the bankruptcy estate and not distributed to creditors . . . [to ensure that a debtor] retains sufficient property to obtain a fresh start[.]" *In re Arwood*, 289 B.R. 889, 892 (Bankr. E.D. Tenn. 2003) (quoting *Lawrence v. Jahn (In re Lawrence)*, 219 B.R. 786, 792 (E.D. Tenn. 1998)). As such, exemptions are determined as of the date upon which the bankruptcy case is commenced and are construed liberally in favor of debtors, *In re Nipper*, 243 B.R. 33, 35 (Bankr. E.D. Tenn. 1999), and "[i]f it is possible to construe an exemption statute in ways that are both favorable and unfavorable to a debtor, then the favorable method should be chosen." *In re Lichtenberger*, 337 B.R. 322, 324 (Bankr. C.D. Ill. 2006). In order to claim property as exempt, the Debtors were required to file a statement listing their property along with the amount of the claimed exemption and the statutory basis therefor. *See* FED. R. BANKR. P. 4003(a). Under § 522(b), the "opt out" provision, states may require debtors to use their exemptions rather than the federal exemptions enumerated in § 522(d), and since Tennessee has "opted out" of the federal exemptions, the Debtors must use Tennessee's statutory exemptions. *See* TENN. CODE ANN. § 26-2-112 (2000).

As a party in interest, the Trustee may object to the Debtors' claimed exemptions. FED. R. BANKR. P. 4003(b). Pursuant to Rule 4003(c) of the Federal Rules of Bankruptcy Procedure, she bears the burden of proof that the exemption has been improperly claimed, and if she fails to establish by a preponderance of the evidence that the Debtors have improperly claimed the exemption, it retains its prima facie presumption of correctness and will stand. *In re Mann*, 201 B.R. 910, 915 (Bankr. E.D. Mich. 1996). In her brief in support of the Objection to Exemption, the Trustee argues that the Debtors may not claim an exemption in the $319.05 monthly payments received pursuant to the ReliaStar Annuity because "it is not an employment related benefit payable because of death, age or length of service[,] . . . [and t]he language of the statute allowing exemption specifically refers to plans and contracts that are both employment related and contingent upon death, age or length of service." TR. BRIEF at 3.

The Debtors claim the exemption in the ReliaStar Annuity under the following Tennessee statute:

> 26-2-111. **Additional exemptions - Certain benefit payments - Awards - Tools of trade - Health care aides - Child support obligations. –** In addition to the property exempt under § 26-2-103[3], the following shall be exempt from execution, seizure or attachment in the hands or possession of any person who is a bona fide citizen permanently residing in Tennessee:
>
> (1) The debtor's right to receive:
>
>    . . . .

---

[3] Section 26-2-103 is Tennessee's general personal property exemption statute.

7

>   (D) To the same extent that earnings are exempt pursuant to § 26-2-106[4], a payment under a stock bonus, pension, profitsharing, annuity, or similar plan or contract on account of death, age or length of service, unless:
>
>   >   (i) Such plan or contract was established by or under the auspices of an insider that employed the debtor at the time that the debtor's rights under such plan or contract arose;
>   >
>   >   (ii) Such payment is on account of age or length of service; and
>   >
>   >   (iii) Such plan or contract does not qualify under §§ 401(a), 403(a), 403(b), 408, 408A, or 409 of the Internal Revenue Code of 1954 (26 U.S.C. §§ 401(a), 403(a), 403(b), 408, 408A or 409).
>
>   The assets of the fund or plan from which any such payments are made, or are to be made, are exempt only to the extent that the debtor has no right or option to receive them except as monthly or other periodic payments beginning at or after age fifty-eight (58). Assets of such funds or plans are not exempt if the debtor may, at the debtor's option, accelerate payment so as to receive payment in a lump sum or in periodic payments over a period of sixty (60) months or less.

TENN. CODE ANN. § 26-2-111(1)(D).

"The cardinal rule of statutory construction is to effectuate legislative intent, with all rules of construction being [aids] to that end." *Browder v. Morris*, 975 S.W.2d 308, 311 (Tenn. 1998); *see also Owens v. State*, 908 S.W.2d 923, 926 (Tenn. 1995) ("The most basic principle of statutory construction is to ascertain and give effect to the legislative intent without unduly restricting or expanding a statute's coverage beyond its intended scope."). "In ascertaining the intent of the legislature, this Court may look to the language of the statute, its subject matter, the object and reach of the statute, the wrong or evil which it seeks to remedy or prevent, and the purpose sought to be accomplished in its enactment." *State v. Collins*, 166 S.W.3d 721, 726 (Tenn. 2005) (internal

---

[4] *See* Section III, *infra*.

8

quotation marks and citation omitted). "When a statute's language is unambiguous, the legislative intent shall be derived from the plain and ordinary meaning of the statutory language." *State v. Wilson*, 132 S.W.3d 340, 341 (Tenn. 2004); *see also Schering-Plough v. State Bd. of Equalization*, 999 S.W.2d 773, 775 (Tenn. 1999) ("Legislative intent is to be ascertained whenever possible from the natural and ordinary meaning of the language used, without forced or subtle construction that would limit or extend the meaning of the language.").

When the parties derive different interpretations from the statutory language, however, "the court must look to the statutory scheme as a whole, as well as legislative history, to discern its meaning." *Parks v. Tenn. Mun. League Risk Mgmt. Pool*, 974 S.W.2d 677, 679 (Tenn. 1998); *see also Galloway v. Liberty Mut. Ins. Co.*, 137 S.W.3d 568, 570 (Tenn. 2004) ("When interpreting statutes, a reviewing court must ascertain and give effect to the legislative intent without restricting or expanding the statute's intended meaning or application."). The ultimate goal "is to adopt a reasonable construction which avoids statutory conflict and provides for harmonious operation of the laws[ and s]tatutes relating to the same subject or sharing a common purpose shall be construed together ('*in pari materia*') in order to advance their common purpose or intent." *Carver v. Citizen Utils. Co.*, 954 S.W.2d 34, 35 (Tenn. 1997); *see also Owens*, 908 S.W.2d at 926 ("Statutes 'in pari materia' – those relating to the same subject or having a common purpose – are to be construed together.").

Utilizing the foregoing rules of statutory construction, the court finds § 26-2-111(1)(D) to be straight-forward. As evidenced by the plain and ordinary language used, the purpose of the statute is to allow Tennessee citizens to exempt a portion of payments received as a replacement for lost

9

earnings, with its application limited to retirement-type benefits such as "a stock bonus, pension, profitsharing, annuity, or similar plan or contract on account of death, age or length of service." In making a determination as to whether the Debtor's payments fit within the scope of § 26-2-111(1)(D), the court's focus is, likewise, two-fold: whether the payments are received pursuant to one of the enumerated types of plans or contracts and whether they are "on account of death, age or length of service."

"[W]here a state has borrowed from similar federal legislation, federal courts may presume that the state legislatures intended what Congress intended." *In re Green*, 2007 Bankr. LEXIS 1182, at *3, 2007 WL 1031677, at *1 (Bankr. E.D. Tenn. Apr. 2, 2007). The wording of § 26-2-111(1)(D) is similar to that of the federal exemption provided by 11 U.S.C. § 522(d)(10)(E) (2006),[5] except that it is, in some ways, broader in that it does not limit the exemption to the extent that the payments are

---

[5] (d)  The following property may be exempted under subsection (b)(2) of this section:

   . . . .

   (10) The debtor's right to receive—

   . . . .

   (E) a payment under a stock bonus, pension, profitsharing, annuity, or similar plan or contract on account of illness, disability, death, age, or length of service, to the extent reasonably necessary for the support of the debtor and any dependent of the debtor, unless—

   (i) such plan or contract was established by or under the auspices of an insider that employed the debtor at the time the debtor's rights under such plan or contract arose;

   (ii) such payment is on account of age or length of service; and

   (iii) such plan or contract does not qualify under section 401(a), 403(a), 403(b), or 408 of the Internal Revenue Code of 1986.

11 U.S.C. § 522(d)(10)(E).

necessary for the support of the debtor and/or dependents of the debtor, and it contains the additional protection of the underlying assets from which the periodic payments are made. Pursuant to its legislative history, § 522(d)(10) "exempts certain benefits that are akin to future earnings of the debtor." *Green*, 2007 Bankr. LEXIS 1182, at *4, 2007 WL 1031677, at *2 (quoting H.R. REP. NO. 95-595, at 362 (1977), *as reprinted* in 1978 U.S.C.C.A.N. 5787, 6318). This connotation is supported by the case law interpreting § 522(d)(10) as well as similarly-worded state statutes.

> "Stock bonus, pension, profitsharing" are forms of retirement benefits that are paid regularly based on a debtor's employment and wages or salary. In other words, they are all forms of deferred compensation for services rendered. Thus, "annuity . . ." refers to benefit plans offered to employees or the self-employed as a means of future compensation after retirement.

*In re Michael*, 339 B.R. 798, 803 (Bankr. N.D. Ga. 2005). Likewise, as summarized by the Supreme Court, after thorough examination of the types of contracts expressly specified in § 522(d)(10),

> [t]he common feature of all of these plans is that they provide income that substitutes for wages earned as salary or hourly compensation. This understanding of the plans' similarities comports with the other types of payments that a debtor may exempt under § 522(d)(10) – all of which concern income that substitutes for wages. But the plans are dissimilar in other respects: Employers establish and contribute to stock bonus, profitsharing, and pension plans or contracts, whereas an individual can establish and contribute to an annuity on terms and conditions he selects. Moreover, pension plans and annuities provide deferred payment, whereas profitsharing or stock bonus plans may or may not provide deferred payment. And while a pension provides retirement income, none of these other plans necessarily provides retirement income. What all of these plans have in common is that they provide income that substitutes for wages.

*Rousey v. Jacoway*, 125 S. Ct. 1561, 1569 (2005).

When deciding whether payments under an annuity or similar contract or plan were intended as retirement benefits or a replacement for income, courts "should examine the facts and

11

circumstances surrounding the purchase of the contract, as well as the nature and contents of the contract[,]" and the following queries should be posited:

- Were the payments designed or intended to be a wage substitute?

- Were the contributions made over time? The longer the period of investment, the more likely the investment falls within the ambit of the statute and is the result of a long standing retirement strategy, not merely a recent change in the nature of the asset.

- Do multiple contributors exist? Investments purchased in isolation, outside the context of work-place contributions, may be less likely to qualify as exempt.

- What is the return on investment? An investment which returns only the initial contribution with earned interest or income is more likely to be a nonexempt investment. In contrast, investments which compute payments based upon the participant's estimated life span, but which terminate upon the participant's death or the actual life span, are akin to a retirement investment plan. That is, will the debtor enjoy a windfall if she outlives her life expectancy? Is she penalized if she dies prematurely?

- What control may the debtor exercise over the asset? If the debtor has discretion to withdraw from the corpus, then the contract most closely resembles a nonexempt investment.

*Andersen v. Ries (In re Andersen)*, 259 B.R. 687, 591 (B.A.P. 8th Cir. 2001).

In this case, there is no dispute that the Debtor purchased the ReliaStar Annuity with the funds previously held within and obtained directly from his SEP-IRA, a "self-employed person's individual retirement account," and the parties have likewise stipulated that the reason given by the Debtor for replacing the original SEP-IRA with the ReliaStar Annuity in January 2000, was to obtain a better monthly annuity rate. It is also undisputed that the Debtor has no control over the corpus, the monthly payments, the amount paid, or any rights under the ReliaStar Annuity other than, as provided by terms of the ReliaStar Annuity, the ability to name a different owner and designate a

12

different beneficiary. The ReliaStar Annuity is for an eleven-year certain term, with any monthly payments to be paid to the Debtor's spouse or his estate in the event of his death and with all payments to cease if he dies after the eleven-year term with no remaining funds to be distributed to his spouse or estate. It is true that the ReliaStar Annuity is, itself, a single premium annuity contract, purchased in a lump sum by the Debtor without normal and customary contributions; however, based upon the foregoing, including the original nature of the underlying assets used to purchase the annuity, the court has no difficulty finding that the $319.05 monthly payments to the Debtor are "akin to future earnings" and intended by him as "income that substitutes for wages," thereby falling firmly within the scope of the enumerated types of plans or contracts within § 26-2-111(1)(D).

The inquiry does not, however, end with that determination. In order for the Debtor to validly exempt his monthly annuity payments, the court must also find that the ReliaStar Annuity is "on account of death, age or length of service." The statute does not define "on account of," and the court found no Tennessee case law on point and, thus, relies upon case law from other jurisdictions, including that from the Supreme Court, which has interpreted the phrase within the Bankruptcy Code "to mean 'because of,' thereby requiring a causal connection between the term that the phrase 'on account of' modifies and the factor specified in the statute at issue." *Rousey*, 125 S. Ct. at 1566.

In answer, the court has focused primarily upon *Andersen v. Ries (In re Andersen)*, 259 B.R. 687, 591 (B.A.P. 8th Cir. 2001). Analyzing similar facts to those in the case at bar, the Eighth Circuit Bankruptcy Appellate Panel reversed the bankruptcy court's determination that the 72-year old debtor was not entitled to exempt, under § 522(d)(10), an annuity purchased with an inheritance she

13

received at age 58 and from which she began receiving monthly payments of $335.00 at age 64. At the time she received the inheritance, the debtor did not have the option of a pension or retirement plan at her place of employment, and she used the inheritance to purchase a $40,000.00 annuity. *Andersen*, 259 B.R. at 689. In 1991, she made the required election stating the date upon which her payments were to begin, at which time she lost her ability to withdraw or surrender the annuity's value, retaining only her right to receive the monthly payments and change the beneficiary who would receive her payments if she died before December 2006. *Andersen*, 259 B.R. at 689. Under the terms of her annuity, the debtor was entitled to receive $335.00 per month for the remainder of her life, with a designated beneficiary to receive those payments in the event of her death up until December 2006. *Andersen*, 259 B.R. at 690. When the debtor and her husband filed their chapter 7 bankruptcy case in December 1999, she had been receiving payments under the annuity for seven years. *Andersen*, 259 B.R. at 690.[6]

>In making its determination, the Bankruptcy Appellate Panel stated that
>
>it is insufficient that the debtor be aged when the annuity is purchased. That is, the fact that the debtor is near or at retirement age when the annuity is purchased does not create a presumption that the payments are being made on account of the debtor's age. Rather, the date the benefit payments are to begin should be related to the debtor's age.

---

[6] The bankruptcy court in *Andersen* sustained the trustee's objection to the debtor's exemption in reliance upon *Eilbert v. Pelican (In re Eilbert)*, 162 F.3d 523 (8th Cir. 1998), in which the Eighth Circuit affirmed the Bankruptcy Appellate Panel's affirmation of the bankruptcy court's determination that the 74-year old debtor was not entitled to exempt an annuity purchased with the proceeds from her husband's estate in contemplation of filing her bankruptcy case to keep the funds from being subject to the claim of a judgment creditor under Iowa Code § 627.6(9)(e) exempting "[t]he debtor's rights in . . . [a] payment under a pension, annuity, or similar plan or contract on account of illness, disability, death, age, or length of service, to the extent reasonably necessary for the support of the debtor and any dependent of the debtor." *Eilbert*, 162 F.3d at 525-26. Distinguishing *Eilbert*, the Bankruptcy Appellate Panel stated that "[c]learly, in *Eilbert*, the single premium investment was not akin to future earnings because the payments did not replace lost income, was not part of a long term strategy, and was admittedly a prebankruptcy planning measure employed to defeat the valid claim of a creditor." *Andersen*, 259 B.R. at 693.

14

*Andersen*, 259 B.R. at 693. Noting that the debtor purchased her annuity thirteen years prior to filing for bankruptcy and having received payments which the court had already determined to be "in lieu of a retirement plan" for seven years prior to filing, the court found as follows:

> On the date of the filing of the bankruptcy petition, Andersen had only a right to receive payments for the term of her life; she had no control or discretion with regard to the payments or the fund. More importantly, when examining the claim of exemption in light of the purpose of the statute, the contract was purchased specifically to serve as a retirement benefit, i.e., a benefit based on age.

*Andersen*, 259 B.R. at 694.

Unlike the *Eilbert* annuitant, who purchased her annuity "with non-exempt, inherited assets as a prebankruptcy planning measure by a prospective debtor who happened to have already reached retirement age," 162 F.3d at 527, and similar to the debtor in *Andersen*, who purchased her annuity thirteen years before filing her case "in order to be able to meet her basic living needs in her retirement years," 259 B.R. at 694, the Debtor here purchased the ReliaStar Annuity eight years before filing for bankruptcy with funds taken directly from his SEP-IRA for the sole purpose of receiving a larger monthly payment. And like the debtor in *Andersen*, once his payments began, the Debtor had no ability to accelerate or receive the commuted value of the annuity or to change the frequency, amount, or length of payout of the payments. Additionally, as evidenced on the Annuity Application, the Debtor had the option to select a different first payment date than the commencement date of March 14, 2000, one month following the issue date, but he did not. This action likewise indicates, as did the actions of the *Andersen* debtor, that the Debtor intended for the annuity payments to continue forming the basis of his retirement and his sole purpose for purchasing

15

the ReliaStar Annuity was, as he stated on the Annuity Application, to receive a "better mo. annuity rate" than he was receiving previously on his SEP-IRA. STIP. EX. A.

Accordingly, the court finds that the Debtor's $319.05 monthly payments received under ReliaStar Annuity are "on account of death, age or length of service" as required by § 26-2-111(1)(D). The Debtor was 67 years old when he purchased the ReliaStar Annuity, well beyond the 58-year old retirement age referenced in § 26-2-111(1)(D), and it was clearly his intention to continue receiving those monthly payments in lieu of wages, as he had under his SEP-IRA with the funds held within his SEP-IRA. "Exemption depends upon the underlying nature of the asset." *Green*, 2007 Bankr. LEXIS 1182, at *12, 2007 WL 1031677, at *4. The Debtor purchased the ReliaStar Annuity through the transfer/rollover of $39,134.20 from his SEP-IRA account with C.M. Life Insurance Company. Clearly, the nature of the underlying assets was "on account of death, age or length of service" and the underlying assets did not change simply because the Debtor moved them to a different annuity which provided him with a better monthly payment.

Likewise, for the foregoing and similar reasons, the Debtor is entitled to exempt the underlying assets of the ReliaStar Annuity. The annuity clearly prohibits his ability to accelerate the payments or cash out the commuted value of any unpaid payments, and because the payment for the annuity was derived from his SEP-IRA, the Debtor had "no right or option to receive [the assets] except as monthly or periodic payments beginning at or after age fifty-eight (58)" as required by § 26-2-111(1)(D). *See Brown v. Westvaco Corp. (In re Cassada)*, 86 B.R. 541, 542-43 (Bankr. E.D. Tenn. 1988) ("The statute provides that the assets are exempt to the extent the debtor has no right or option to receive them in any manner except as periodic payments beginning at age 58 or later.").

In summary, the court finds that the Debtor's monthly payments of $319.05 from his ReliaStar Annuity fall within the scope of Tennessee Code Annotated § 26-2-111(1)(D) as scheduled, as does the balance thereof to be paid out for a life certain of eleven years.

### III

Having found that the Debtor is entitled to exempt his monthly payments, the court must now determine the extent to which his payments are exempt, as they are limited by § 26-2-111(1)(D) "[t]o the same extent that earnings are exempt pursuant to § 26-2-106[.]" Tennessee Code Annotated § 26-2-106 "places a limit of 75% on the amount of such funds that are exempt," *Lawrence v. Jahn (In re Lawrence)*, 219 B.R. 786, 798 (E.D. Tenn. 1998), and states the following:

> 26-2-106. **Maximum amount of disposable earnings exempt from garnishment—Garnishment costs.—** (a) The maximum part of the aggregate disposable earnings of an individual for any workweek which is subjected to garnishment may not exceed:
>
>> (1) Twenty-five percent (25%) of the disposable earnings for that week; or
>>
>> (2) The amount by which the disposable earnings for that week exceed thirty (30) times the federal minimum hourly wage at the time the earnings for any pay period become due and payable, whichever is less.
>
> (b) In the case of earnings due for any pay period other than a week, an equivalent amount shall be in effect.
>
> (c) The debtor shall pay the costs of any and all garnishments on each debt on which suit is brought.

TENN. CODE ANN. § 26-2-106 (Supp. 2008). The parties have stipulated that the federal minimum hourly wage applicable at the time of the commencement of the Debtor's case was $6.55.

The Debtor receives $319.05 monthly under the ReliaStar Annuity. In order to arrive at the weekly amount required under subsection (a)(1), the court has multiplied his monthly payment by twelve months and divided by fifty-two weeks to arrive at $73.63 per week. Twenty-five percent of that figure is $18.41 or $79.78 per month. Under subsection (a)(2), the court has multiplied the federal minimum hourly wage of $6.55 by the statutorily directed thirty, for a total of $196.50. *See* STIPS. at ¶ 13. Because the amount by which the weekly payment exceeds $196.50 is zero ($0.00), the entire $73.63 per week, or $319.05 per month, is exempt from garnishment.

An order overruling the Trustee's Objection to Exemption will be entered.

FILED: June 2, 2009

                                      BY THE COURT

                                      */s/ RICHARD STAIR, JR.*

                                      RICHARD STAIR, JR.
                                      UNITED STATES BANKRUPTCY JUDGE